UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SYLVIA RIZEK, | ) | CASE NO. 5:23-cv-721 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| WAL-MART STORES EAST, LP, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the motion for summary judgment (Doc. No. 57 (Motion)) filed by defendant Wal-Mart Stores East, LP ("Wal-Mart"). Plaintiff Sylvia Rizek ("Rizek") opposes the motion (Doc. No. 61 (Opposition)), and Wal-Mart filed a reply (Doc. No. 63 (Reply)).[1] For the reasons discussed herein, the motion for summary judgment is granted and the case is dismissed.

## I. BACKGROUND

The facts of this case are straightforward and largely undisputed. On April 3, 2021, Rizek was shopping at a Wal-Mart store in Akron, Ohio ("the Local Store") when a fixture on the top shelf holding two-liter bottles of soda suddenly came loose and fell, resulting in the fixture and several two-liter bottles of soda striking Rizek. (Doc. No. 55-1 (Deposition of Sylvia Rizek), at 5 (13:18-24), 6 (15:2–16).)[2] Employees who had been stocking shelves on the opposite side of the

---

[1] Rizak filed an unopposed motion to correct a typographical error in a motion for an extension of time relative to the date Rizak's opposition brief was due. (Doc. No. 59 (Motion to Correct); *see* Doc. No. 58 (Motion for Extension of Time).) Because the Court finds that the summary judgment briefing was timely filed, the motion to correct is moot.

[2] Page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system. Given that depositions appear on the docket in a four-to-a-page format, for ease of

aisle heard the noise from the fall and rushed toward Rizek. (*Id.* at 7 (19:13–16).) The employees called their manager. (*Id.* at 7 (19:25–20:3).) When the manager arrived on the scene, Rizek asked her to call an ambulance, but the manager stated that she could not call an ambulance on Rizek's behalf. (*Id.* at 8 (22:11–15).) After the manager took an incident report, Rizek left the store. (*Id.* at 8 (24:10–14).) Rizek alleges she suffered serious and permanent physical injures as well as economic damages. (*Id.* at 11–12 (34:7–41:18), 14 (46:19–49:10); Doc. No. 29 (Second Amended Complaint ("SAC")) ¶¶ 25–29.)

On March 3, 2023, Rizek filed a complaint in the Summit County Court of Common Pleas against Wal-Mart Stores East, LP, Wal-Mart Stores, Inc., and John and Jane Does 1–3, whom Rizek averred were "Wal-Mart associates, employees, and/or agents who caused and/or contributed" to her accident. (Doc. No. 1-1 (Complaint) ¶ 4.) In the complaint, Rizek asserted a claim against each of the defendants for negligence in maintaining the soda display. (*Id.* ¶¶ 8–29.)[3]

On April 7, 2023, the case was removed to this Court on the basis of diversity jurisdiction. (Doc. No. 1 (Notice of Removal) ¶ 8.) On July 10, 2023, Rizek filed the first amended complaint ("FAC"), adding Pepsi Cola General Bottlers ("Pepsi") as a defendant and asserting that Pepsi's employees had failed to maintain the Local Store's soda shelves in a reasonably safe condition. (Doc. No. 11 (FAC) ¶¶ 32–52.) The FAC also eliminated Wal-Mart Stores, Inc. as a defendant and described John and Jane Does 1–3 as "Wal-Mart [Stores East, LP] and/or Pepsi associates,

---

reference, a second number appearing in parentheses reflects the corresponding page and line number supplied by the court reporter.

[3] Rizek brought a second claim, sounding in spoliation, against Walmart for allegedly failing to preserve video footage from the accident. (*See id.* ¶¶ 31–40.)

employees and/or agents[.]" (*Id.* ¶ 5.)[4] The FAC asserted one count of negligence each against Wal-Mart Stores East, LP, and Pepsi. (*Id.* ¶¶ 10–52.)

On December 6, 2023, after learning that The American Bottling Company ("TABC"), not Pepsi, was the entity responsible for maintaining the soda display, Rizek filed the SAC removing Pepsi as a defendant and adding TABC. (*See* Doc. No. 29, at 1.) TABC subsequently filed a motion to dismiss, arguing that Rizek's negligence claim against it was time-barred. (Doc. No. 35 (TABC's Motion to Dismiss), at 3.) The Court granted TABC's motion, finding that Rizek's claim against it exceeded the two-year statute of limitations that applies to personal injury claims in Ohio. (Doc. No. 47 (Order Granting Motion to Dismiss), at 4–7.) The remaining defendants in this case are Wal-Mart and John and Jane Does 1–3. On July 31, 2024, Wal-Mart filed its motion for summary judgment.

## II. STANDARD OF REVIEW

When a party files a motion for summary judgment, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, the district court views the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact

---

[4] Additionally, the FAC dropped the spoliation claim raised in the original complaint. (*See id.*)

exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A factual dispute is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (noting that summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient.

*Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

Under this standard, the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion. *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (citing *Anderson*, 477 U.S. at 247–48 (quotation marks omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

Because the Court is sitting in diversity, Ohio substantive law applies. *See, e.g.*, *Reid v. Volkswagen of Am., Inc.*, 575 F.2d 1175, 1176 (6th Cir. 1978) (per curiam) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

### III. DISCUSSION

Rizek seeks to hold Wal-Mart liable for damages on a negligent-premises theory of liability. To establish negligence under Ohio law, Rizek must show that Wal-Mart owed her a duty of care, that it breached the duty, and that the breach proximately caused Rizek's injury. *Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122–23 (Ohio 2009) (citations omitted). Courts do not presume negligence "from the mere fact of an accident and resulting injury," instead requiring the plaintiff to show "specific acts or omissions indicating failure on the part of the defendant to exercise due care" that proximately caused the injury. *Wise v. Timmons*, 592 N.E.2d 840, 842 (Ohio 1992) (quotation marks and citation omitted). As the Court will explain, because Rizek has

5

not offered sufficient evidence to establish a genuine issue of material fact as to whether Wal-Mart breached its duty of care, Wal-Mart is entitled to judgment as a matter of law.

### A. Wal-Mart's Duty to Rizek

For premises liability claims, the scope of the landowner's duty to an entrant is defined by the entrant's status as a trespasser, licensee, or invitee. *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996) (citation omitted). Ohio law defines a business invitee as a person who is on the premises "of another by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986) (citation omitted). The parties agree that when the incident that gave rise to Rizek's injury occurred, Rizek was shopping at Wal-Mart. (Doc. No. 29 ¶¶ 10–13; Doc No. 57, at 2.) This makes her a "business invitee[.]" *Kohler v. Kohl's Dep't Stores, Inc.*, No. 1:18-cv-468, 2020 WL 6319171, at *2 (N.D. Ohio Sept. 8, 2020) (explaining that under Ohio law, customers are categorically "business invitees").

Retail establishments like Wal-Mart owe their invitees "a duty of ordinary care in maintaining the premises in a reasonably safe condition" so that they "are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985) (per curiam). This duty requires Wal-Mart to exercise reasonable care "(1) to avoid injuring a customer by negligent activities; (2) to warn customers of hidden dangers known to the store owner; (3) to make reasonable inspections of the business premises to discover any potential dangers; and (4) to take reasonable precautions to protect its customers from dangers which are foreseeable from the arrangement or use of the premises." *Elam v. Kroger Co.*, No. C-940692, 1995 WL 392489, at *2 (Ohio Ct. App. July 5, 1995) (citation omitted). That duty, however, does not make Wal-Mart a general "insurer of the customer's safety." *Paschal,* 480 N.E.2d at 475.

According to Rizek, the dangerous condition at the Local Store was a display of two-liter bottles of soda that was secured with a plastic glide instead of metal fencing. (Doc. No. 61, at 4.) Specifically, Rizek argues that the plastic glide was a latent defect in the soda display that caused the bottles to fall. (*Id.* at 13.) "A latent danger is 'a danger that is hidden, concealed and not discoverable by ordinary inspection, that is, not appearing on the face of a thing and not discernible by examination.'" *Gordon v. Dollar Gen. Corp.*, 2:18-cv-939, 2020 WL 4784659, at *3 (quoting *Potts v. Smith Constr. Co.*, 261 N.E.2d 176, 179 (Ohio Ct. App. 1970)).

A plaintiff can prevail on a negligence theory based on a latent defect if she establishes one of the following: (1) the defendant created the danger; (2) the defendant had actual knowledge of danger and failed to give notice or address it; or (3) the hazard existed for sufficient period of time to justify an inference that failure to warn against it or remove it was attributable to lack of ordinary care. *Ray v. Wal-Mart Stores, Inc.*, 993 N.E.2d 808, 817 (Ohio Ct. App. 2013) (citations omitted). When a negligence lawsuit rests on the existence of a latent defect, as here, "actual or constructive notice of the defect is an essential element in perfecting the claim that the owner or occupier of the premises failed to comply with the requirement of reasonable care." *Sharp v. Andersons, Inc.*, No. 06AP–81, 2006 WL 2259706, at *3 (Ohio Ct. App. Aug. 8, 2006) (quoting *Murphy v. K-Mart*, No. 97APE08-1129, 1998 WL 134330, at *3 (Ohio Ct. App. Mar. 24, 1998)).

i. **Rizek has not presented evidence of an unreasonably dangerous condition.**

In a negligence action under Ohio law, "the presumption exists that each party was in the exercise of ordinary care and such presumption prevails until rebutted by evidence to the contrary." *Biery v. Pennsylvania R. Co.*, 99 N.E.2d 895, 895 (Ohio 1951) (citations omitted). In this case, however, there is no evidence in the record indicating what caused the bottles to fall. (*See, e.g.,*

7

Doc. No. 55-3 (Deposition of Ann Marie Daniel), at 45 (177:21–23) (Daniel explaining she has no idea how or why the bottles fell); Doc. No. 55-4 (Deposition of Bianca Fatica), at 12 (42:11–43:17) (Fatica explaining she is unaware of any other incident like Rizek's at Wal-Mart).) Likewise, there is no support for Rizek's proposition that the plastic glide, itself, was a dangerous, latent defect. (Doc. No 55-2 (Deposition of Anthony Rago), at 12 (41:8–11) (Rago explaining that, in his experience, the plastic glides "work pretty well").) Because Rizek has not presented any affirmative evidence that the soda bottles were displayed in a dangerous manner, the Court finds she has not met her threshold burden in this negligent-premises action to show that an unreasonably dangerous condition existed at Wal-Mart.[5]

In her opposition, Rizek asks the Court to infer that an unreasonably dangerous condition existed because the Local Store's soda display did not comply with the Wal-Mart Home Office's ("the Home Office") instructions. (Doc. No. 61, at 2–4.) Rizek presents two "modular" diagrams that the Home Office provides to the Local Store to instruct it "how shelving and fixtures are used for different products" and to explain "what [product] goes where" within the warehouse shelves. (*Ibid.*; Doc. No. 55-3, at 20 (78:19–80:24) (Daniel explaining modulars are provided by the Home Office to instruct the Local Store on how merchandise is to be displayed).) The diagrams depict the top shelf of the soda display, which is where the bottles that fell on Rizek fell from, as being downward sloping and secured by fencing. (Doc. No. 61, at 3.) The three lower shelves in the diagram do not depict fencing. (*Ibid.*) "As the Local Store is responsible for following Home

---

[5] The parties dispute whether the metal fencing is safer than plastic glides for holding soda bottles. (*Compare* Doc. No. 61, at 4 *with* Doc. No. 63, at 7.) This disagreement is not material to the resolution of the motion because the pertinent question in this negligent-premises action is not whether the metal fencing is relatively safer than the plastic glide, but rather, whether the plastic glide amounted to an unreasonably dangerous condition at the Local Store. *See Anderson*, 477 U.S. at 248 (explaining that a factual dispute is material only if its resolution may affect the outcome of the lawsuit).

Office directives," Rizek asserts, "a reasonably prudent juror could conclude that substituting a removable 'plastic glide' held in place by 'shims' sitting atop a shelf that is titled downward presents a much greater risk of harm than Home Office's specification of shelf-fencing, which is permanently affixed to the top shelf, never moves, and never releases its payload." (*Id.* at 11.) Rizek argues, in conclusory fashion, that "whether shelf-fencing would have prevented [p]laintiff's accident is simply a matter of common sense." (*Ibid.*)

With the exception of actions invoking *res ipsa loquitur*, the court does not infer elements of negligence in a premises liability action.[6] *Hutchison v. Lowes Home Centers, LLC*, No. 21-4048, 2022 WL 1773720, at *2 (6th Cir. June 1, 2022) (affirming district court's grant of summary judgment to department store in personally injury action where plaintiff-customer failed to offer any evidence of a defect, relying, instead, on speculation). Further, "conclusory allegations" like Rizek's "are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Zirkle v. Menard, Inc.*, No. 5:19-cv-1489, 2020 WL 5423973, at *2 (N.D. Ohio Sept. 10, 2020) (conclusory allegations and speculation cannot defeat a properly supported summary judgment motion (citing *Lujan*, 497 U.S. at 888)). For the Court to conclude that a dangerous, latent condition existed at the Local Store, affirmative evidence of danger is required. *Bell,* 351 F.3d at 247 (to defeat summary judgment, the party opposing the motion must present affirmative

---

[6] Though her opposition argues that Wal-Mart controls "[e]very aspect of product placement and shelving," Rizek does not explicitly invoke *res ipsa loquitur*, a doctrine in tort law "which permits . . . the jury to draw an inference of negligence when the logical premises for the inference are demonstrated." (Doc. No. 61, at 2). *See Jennings Buick, Inc. v. Cincinnati,* 406 N.E.2d 1385, 1387 (Ohio 1980) (explaining when res ipsa loquitur may be applicable in a negligence action). Even if she did invoke the doctrine, however, this narrow exception to the conventional proof a negligence claim requires would not help Rizek. *Res ipsa loquitur* applies only where the instrumentality that caused the injury is under the exclusive management and control of the defendant, which is not the case in the Local Store. *See Hansen v. Wal-Mart Stores, Inc.*, No. 07-cv-2990, 2008 WL 2152000, at *8 (Ohio Ct. App. May 20, 2008) ("[A] defendant does not have exclusive control over a display of merchandise where members of the public frequent an area and have access to the display.").

evidence to support his or her position (citations omitted)). As explained, Rizek has not mustered evidence showing that the use of the plastic glide was dangerous or defective, established that metal fencing would have prevented the incident, or otherwise demonstrated why the bottles fell from the shelf in the first place. *See Hutchison*, 2022 WL 1773720, at *2 (rejecting claim of a hazardous condition in a Lowe's display as evidentiarily deficient because plaintiff did not demonstrate that the display was defective or that plaintiff's injury would have been prevented if the display had been secured with multiple chains). Rizek's accusation that the Local Store's soda display was not compliant with the Home Store's instructions does not make up for this evidentiary deficiency. *See, e.g., Pelland v. Wal-Mart Stores, Inc.*, 282 F. Supp. 3d 1019, 1026 (N.D. Ohio 2017) ("even assuming that a violation of internal Wal–Mart policy occurred, such a violation does not, as a matter of Ohio law, establish negligence." (citing *Martin v. Giant Eagle, Inc.*, No. 13AP–809, 2014 WL 2809258 (Ohio Ct. App. Jun. 19, 2014)); *Ray*, 993 N.E.2d at 821 ("a reasonable inference of negligence does not arise simply because an employee failed to comply with a policy directive").

### ii. Rizek has not presented evidence that Wal-Mart created the latent danger.

Even if Rizek demonstrated that a dangerous, latent condition existed in the soda aisle, her opposition to Wal-Mart's motion for summary judgment would still fall short because she does not demonstrate that Wal-Mart had notice of the dangerous condition. Under Ohio law, "proof that the operator or [its] employees created the condition" is one way to show "that [it] had notice of [the dangerous condition]." *Tackett v. Wal-Mart Stores E., Inc.*, No. 1:05-cv-560, 2007 WL 2668133, at *2 (S.D. Ohio Sept. 6, 2007) (citing *Detrick v. Columbia Sussex Corp.*, 629 N.E.2d 1081, 1083 (Ohio Ct. App. 1993)). But the record does not support Rizek's argument

that Wal-Mart or its employees created a latent danger. (Doc. No. 61, at 8–9.) First, there is no evidence that Wal-Mart supplied the plastic glide. (Doc. No. 55-3, at 21 (84:2–13) (Daniel explaining that vendors, not Wal-Mart, supply the display shelving for their own products)); (Doc. No. 55-2, at 20 (70:25–71:3) (Rago explaining that, to his knowledge, Wal-Mart does not supply the "particular set of glides" at issue in this case).) Second, there is no evidence from which a jury could find that Wal-Mart installed the glide. (Doc. No. 55-3, at 22 (85:5–19) (Daniel explaining that Wal-Mart's vendors install the shelving for their products).) Finally, the record demonstrates that Wal-Mart did not stock the bottles that fell on Rizek. (Doc. No. 55-2, at 13 (43:22–24).) The glide contained 7-Up products, which would have been stocked by Wal-Mart's 7-Up vendor, TABC, who is no longer a defendant in this case. (Doc. No. 63, at 1; *see generally* Doc. No. 47.) Lacking evidence that Wal-Mart provided the glide, installed the glide, or stocked the bottles that were displayed in the glide, Rizek cannot demonstrate that Wal-Mart created the dangerous condition.

### iii. Wal-Mart did not have constructive notice of an unreasonably dangerous condition.

Rizek argues that Wal-Mart had constructive notice of the latent danger. (Doc. No. 61, at 12–18.) Constructive knowledge of a latent defect arises when the danger exists "for a sufficient length of time to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care." *Ray*, 993 N.E.2d at 817  But proof "of how long the condition existed is mandatory" when it comes to showing constructive notice (*id.* at 824 (quotation marks and citation omitted)), and though the record indicates that Wal-Mart did not supply the glide (Doc. No. 55-2, at 20 (70:25–71:3)), install the glide (Doc. No. 55-3, at 22 (85:5–19)), or stock the soda contained therein (Doc. No. 55-2, at 13 (43:22–24)), it also does not establish when the glide was installed. Thus, Rizek's constructive notice argument fails.

11

In resisting this conclusion, Rizek argues that Wal-Mart's failure to conduct inspections of its shelving should render its "ignorance of a defect which renders the premises unsafe" immaterial.[7] (*See* Doc. No. 61, at 14 ("The record is clear, Walmart never conducts regular inspections of its shelves." (emphasis omitted)).) Rizek is correct that Wal-Mart's duty of reasonable care requires that it "make reasonable inspections of the business premises to discover any potential dangers." *Paschal*, 480 N.E.2d at 475. In some cases, a "premises owner may be charged with constructive knowledge if a reasonable inspection would have revealed the potentially hazardous condition." *Ray*, 993 N.E.2d at 823. But even if Rizek had produced proof of how long the dangerous condition existed, this argument would fail because the record establishes Wal-Mart and its vendor partners collaborate to conduct inspections of the shelves throughout the day. (Doc. No. 55-3, at 39–40 (156:13–157:4).) Vendors who "see that there is an issue with shelving . . . are to address the issue." (*Id.* at 39 (156:10–12); *see also* Doc. No. 55-2, at 13 (42:14–21), 20 (73:11–20) (Rago explaining that if a vendor discovers an unstable glide, the vendor is expected to remove the glide or make other arrangements to fix its instability).) Further, there is no evidence of a prior incident that might have suggested that Wal-Mart's third-party inspection processes are insufficient. (*See, e.g.,* Doc. No. 55-2, at 12 (40:23–41:3) (Rago

---

[7] In support of her position, Rizek cites to *Kubiak v. Wal-Mart Stores, Inc.*, 725 N.E.2d 334 (Ohio Ct. App. 1999), a negligent-premises action in which the Ohio Third District Court of Appeals affirmed the trial court's judgment in favor of plaintiff-customer. (Doc. No. 61, at 14, 17.) The *Kubiak* court found that reasonable minds could conclude that "Wal–Mart's failure to employ maintenance inspections on the displayed exercise equipment was negligent in view of the foreseeable risk that customers might abuse the equipment and render it harmful to a customer testing the equipment." *Kubiak*, 725 N.E.2d at 338. But Rizek's case is distinguishable from *Kubiak* because she cannot contend that Wal-Mart's third-party inspection processes are "negligent in view of *a foreseeable risk*" to its customers. *Kubiak*, 725 N.E.2d at 338 (emphasis added). As explained, there is no evidence demonstrating why the bottles fell from the shelf, and no record of a similar, prior incident to provide notice that the plastic glides are hazardous or that Wal-Mart's third-party inspection processes are insufficient. (*See, e.g.,* Doc. No. 55-2, at 12 (40:23–41:3); Doc. No. 55-3, at 38 (149:12–23); Doc. No. 55-4, at 12 (42:11–43:17).) Further, unlike the exercise equipment display that was not subject to a "prepared inspection schedule" in *Kubiak,* 725 N.E.2d at 336, the Local Store's soda display was subject to continuing visual inspections throughout the day. (Doc. No. 55-3, at 39–40 (156:13–157:4).)

explaining he has never seen a similar incident in over 20 years in the industry); Doc. No. 55-3, at 38 (149:12–23) (Daniel explaining she has no personal knowledge of problems with the soda shelving); Doc. No. 55-4, at 12 (42:11–43:17) (Fatica explaining the shelving incident with Rizek is the only such incident of which she was aware).) Rizek has not established that Wal-Mart failed to meet its legal obligation to conduct reasonable inspections in this case.

Under applicable Ohio law, the Court finds a jury could not conclude that Wal-Mart breached its duty of ordinary care to Rizek "without resorting to naked supposition and bare speculation. That does not suffice to survive summary judgment." *Hutchison*, 2022 WL 1773720, at \*2 (citing *Ray*, 993 N.E.2d at 825; *Hartman v. Meijer Stores Ltd. P'ship*, No. CA2010–03–065, 2010 WL 4340644, at \*2–3 (Ohio Ct. App. Nov. 1, 2010)).

### B. Claims Against the John and Jane Doe Defendants

While this case has been litigated exclusively between Rizek and various named defendants, Rizek's SAC also lists "John and Jane Does 1–3" as parties to this action. (Doc. No. 29.) Rizek describes the Does only as "Wal-Mart and/or Pepsi associates, employees and/or agents who caused and/or contributed to the incident[.]" (Doc. No. 29 ¶ 5.)[8] She has offered no further explanation of the Does' conduct, nor of which of the Does represent Wal-Mart, the only remaining named defendant in this case. (*See generally id.* (Rizek's SAC asserting two counts of negligence, neither of which mention the three Doe defendants by number or name).) Discovery in this case is now complete, but Rizek has still not identified or served any of the Doe defendants. (Doc. No. 39 (Case Management Plan and Trial Order), at 1.)

---

[8] Before Rizek filed her SAC, she filed a stipulated notice of dismissal of all claims against Pepsi under Fed. R. Civ. P. 41(a)(1) explaining that Pepsi was named in error instead of TABC. (Doc. No. 27 (Stipulated Notice of Voluntary Dismissal).) Thus, the Court will assume that Rizek intended to describe the Does as "Wal-Mart and/or *TABC* associates" in the SAC, but that is a distinction without a difference for Rizek because the Court also dismissed Rizek's claim against TABC. (Doc. No. 47.)

13

"In general, the use of unnamed defendants is not favored in the federal courts." *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001) (citation omitted), *overruled on other grounds by Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002). "Simply naming a person, using a fictitious title, in a lawsuit does not make that person a party and does not prevent the entry of a final judgment." *Mosholder v. Lowe's Home Ctrs., LLC*, 444 F. Supp. 3d 823, 832 (N.D. Ohio 2020) (citing *Haddad,* 154 F. Supp. 2d 1093) (further citation omitted). Since filing this action over a year ago, Rizek has had adequate opportunity to identify the Doe defendants but has failed to do so. Thus, the unnamed defendants are dismissed without prejudice.

### IV. CONCLUSION

For the reasons set forth herein, defendant Wal-Mart's motion for summary judgment (Doc. No. 57) is granted, the claim against the John and Jane Doe defendants is dismissed without prejudice, and this case is dismissed.[9]

**IT IS SO ORDERED**.

Dated: November 1, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[9] Because the Court grants Wal-Mart summary judgment on the only claim against it, the Court need not consider Wal-Mart's alternative argument that the statutory cap on non-economic damages applies. (*See* Doc. No. 57, at 16–21.)

14